# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CPI CARD GROUP-NEVADA, INC.**                    **CIVIL ACTION**

**VERSUS**                                          **NO: 11-2873**

**TRAFFIC JAM EVENTS, LLC**                         **SECTION: "R" (4)**

## REPORT AND RECOMMENDATION

On December 13, 2012, the presiding U.S. District Judge issued an Order granting an award

of reasonable attorney's fees to Plaintiffs, CPI Card Group-Nevada, Inc., ("CPI") in connection with

the grant of CPI's Motion for Partial Summary Judgment on the issue of Defendant, Traffic Jam

Events, LLC's, ("Traffic Jam") contractual liability to CPI.  (R. Doc. 26).  In compliance with the

Court's Order, CPI filed **Plaintiff, CPI Card Group-Nevada, Inc.'s Motion for Reasonable**

**Attorney's Fees (R. Doc. 36)**, in which it seeks an award of $28,658.54.[1]  CPI also filed a Reply,

(R. Doc. 45) and Traffic Jam has filed an Opposition (R. Doc. 50).[2]  The Motion was heard on the

briefs.

---

[1]This Motion was referred to the undersigned U.S. Magistrate Judge on January 7, 2013.  (R. Doc. 41).

[2]The instant Motion was noticed for submission on January 16, 2013, and Traffic Jam filed an initial "Opposition" on January 14, 2013.  In its Reply, CPI points out that Traffic Jam's initial filing was untimely.  (R. Doc. 45, pp. 1-2).  According to Local Rule 7.5, "[e]ach party opposing a motion must file and serve a memorandum in opposition to the motion . . . no later than eight days before the noticed submission date."  L.R. 7.5.  Traffic Jam's initial "Opposition," filed two days prior to the noticed submission date, was in contravention of the Rule and is not considered in this Order.  However, Traffic Jam subsequently sought leave to file another "Opposition" (R. Doc. 50), which the Court granted.  Although CPI's "Reply" is entitled a "Supplemental Memorandum" presumably because it was filed into the record prior to the date at which Traffic Jam properly sought leave to oppose CPI's Motion for Attorney's Fees, for purposes of this Order it will be referred to as a "Reply."

I.     **Background**

This was a contract dispute which was before the court based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332.  According to the Complaint, "during the latter portion of 2010," Traffic Jam placed an order for 3,440,000 printed plastic cards, which CPI delivered.  (R. Doc. 1, p. 2).  Between December 9, 2010, and January 7, 2011, CPI sent Traffic Jam three separate invoices for the cards.  *Id.*  CPI alleged that in the months that followed, Traffic Jam failed to pay any amount of the invoices.  *Id.*  CPI's main claim demanded full payment of the outstanding balance of $127,972.02, as well as CPI's reasonable attorney's fees, legal interest, and court costs pursuant to La. Rev. Stat. Ann. art. § 9:2781.  *Id.* at 3.  Traffic Jam filed a counterclaim arguing, *iner alia*, that its contractual obligations were waived by virtue of the fact that the cards which were delivered were defective.  (R. Doc. 4).

On December 13, 2012, the presiding U.S. District Judge found that Traffic Jam had an "open account" with CPI for the purchase of the cards, and therefore granted CPI's Motion for Partial Summary Judgment in the amount of $127,972.02, including attorney's fees.  (R. Doc. 26, p. 8).

On December 27, 2012, CPI filed the instant Motion.  (R. Doc. 36).  On January 7, 2013, the presiding U.S. District Judge entered an Order of Dismissal in this case related to CPI's main claim, and on the same day referred the instant Motion to the undersigned.  (R. Docs. 40, 41).

Thereafter, on February 22, 2013, CPI and Traffic Jam filed a joint motion requesting dismissal of Traffic Jam's counterclaim with prejudice, explaining that the claim had been settled with "valuable consideration" paid to Traffic Jam by CPI's insurer, Traveler Property Casualty Company of America, ("Travelers").  (R. Doc. 52, p. 1).  The District Judge dismissed Traffic Jam's

counterclaim with prejudice, and stated that "this order of dismissal is not to affect [CPI's] main demand against [Traffic Jam] for payment on its open account." (R. Doc. 55).

## II.    Attorney's Fees

### A.    Standard of Review

In diversity actions such as this, state law controls both the award of and the reasonableness of attorney's fees awarded. *See Alyeska Pipeline Services Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).[3]   "[A]s a general rule attorney fees are not allowed except when authorized by statute or contract." *Killebrew v. Abbott Laboratories*, 359 So.2d 1275, 1279 (La. 1978).

The Louisiana Open Account Statute, La. Rev. Stat. Ann. art. § 9:2781 provides for an award of reasonable attorney's fees against a person who "fails to pay on an open account within thirty days after the claimant sends written demand." *Id.*  This award covers "fees for the prosecution and collection of such a claim when judgment on the claim is rendered in favor of the claimant." *Id.* "'Open account' shall include debts incurred for professional services." *Id.* at § 9:2781(D).  To receive attorney's fees, the statute requires the claimant to send a "written demand therefore correctly setting forth the amount owed." *Id.* at § 9:2781(a); *Roy v. Gegenheimer*, 573 So.2d 555, 556 (La. App. 5 Cir. 1991).[4]  "The Louisiana Supreme Court has cautioned that the Open Account Statute must be construed strictly because the award of attorney fees is exceptional and penal in

---

[3]CPI argues that although the federal lodestar approach is not followed in federal diversity cases, "some of the Louisiana factors are the same as the twelve factors found in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974." (R. Doc. 36-1, p. 2 n.1).  Nevertheless, other federal courts in this district have found that "[t]he 'lodestar' enhancement is foreign to Louisiana law." *Atari v. MrNeal*, No. 00-1835, 2002 WL 221613, at *2 (E.D. La. Feb. 8, 2002); *see also Walle Corp. v. Rockwell Graphics Systems, Inc.*, No. 90-2163, 1992 WL 245975, at *4 (E.D. La. Sept. 21, 1992).  *But see Cargill, Inc. v. Clark*, 2013 WL 1187953 (M.D. La. Mar. 21, 2013) (citing both lodestar method and Louisiana state factors in connection with a diversity action).

[4]In this case, the parties do not contest that CPI's demand for $127,972.02 was accurate.

nature." *Ormet Primary Aluminum Corp. v. Ballast Technologies, Inc.*, 436 F. App'x 297, 300-01 & n.9 (5th Cir. 2011) (formatting altered) (quoting *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014, 1015-16 (La. 1984)).

In assessing the reasonableness of attorney's fees, ten factors are taken into account. *State of Louisiana Dep't of Transportation and Development v. Williamson*, 597 So.2d 439, 442 (La. 1992). These factors are (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Id.* at 442.

The *Williamson* factors are in turn derived from Rule 1.5(a) of the Rules of Professional Conduct. *Id.* at 442 n.9. These Rules "have the force and effect of substantive law." *Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Ltd.*, 554 So.2d 1347, 1354-55 (La. App. 1 Cir. 1989) (citation omitted). Under Rule 1.5(a), the Court should consider the following when determining the reasonableness of any attorney's fee motion:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent. *Id.*

*Id.* Both the *Williamson* factors, as well as those under Rule 1.5(a), are permissive; consideration

4

of all of them is not necessary in any one case.  *Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988); *GMAC Commercial Mortgage Corp. ex rel. Lasalle National Bank v. Chateau Deville Apartments Partnership*, No. 02-1845, 2003 WL 21674467, at *2 n.1 (E.D. La. July 16, 2003) (Vance, J.) (citing *Fourchon*).

Similarly, the reasonableness of a particular fee is determined by the facts of an individual case.  *Gottesegen v. Diagnostic Imaging Services*, 672 So.2d 940, 943 (Lap App. 5 Cir. 1996). Parties are not entitled to "collect a fee that is 'clearly excessive.'"  *Oreck*, 2009 WL 961276, at *2 (quoting *National Information Services, Inc. v. Gottsegen*, 737 So.2d 909, 919 (La. App. 5 Cir. 1999)).  When considering the appropriateness of a particular fee, the Court should consider "the entire record, including discovery, pretrial motions, [and] the legal issues involved."  *Richardson v. Parish of Jefferson*, 727 So.2d 705, 707 (La. App. 5 Cir. 1999).  A court need not hear evidence concerning time spent or hourly rates charged in order to make an award; the record should appropriately reflect the majority of the services rendered.  *In re Andras*, 410 So.2d 328, 331 (La. App. 4 Cir. 1982).

### B.   Analysis

The Court, following *Fourchon*, finds that detailed consideration of all of the *Williamson* factors, or the Model Rules they are derived from, would not be productive, especially as the parties have supported their positions largely with reference to federal law.  Specifically, of the *Williamson*

factors, the (a) importance of the litigation,[5] (b) money involved,[6] (c) number of appearances made[7] are either not relevant, or are not adequately briefed.  The Court also finds that insofar as the fact that its "own knowledge" should instruct the decision, this factor need not be presented in a separate subheading.  The Court also elects not to independently address the Rule 1.5(a) factors except as specified herein.

1. <u>**Factors in the Award**</u>[8]

a. **Counsel's Legal Knowledge; Customary Fees; Diligence and Skill**

i. **Legal Knowledge**

The fee application submitted by CPI seeks to recover fees from three attorneys and one paralegal who it claims worked on this case.  These attorneys are Ronald Grant ("Grant") of the firm Tilles, Webb, Kulla, and Grant, ALC ("Tilles, Webb"); Charles Stern ("Stern") of the Steeg Law Firm, LLC ("Steeg Law Firm"); Margaret Glass ("Glass") of the Steeg Law Firm; and Nicle Jené, ("Jené") of the Steeg Law Firm.  (R. Doc. 36-1, pp. 2-4).

CPI has submitted an Affidavit from Grant in support of its Motion.  ("Grant Affidavit"). The Grant Affidavit states that Grant is a shareholder of Tilles, Webb; that he has been a practicing attorney for over 30 years; and that he has been working for CPI for 20 years.  (R. Doc. 36-2, p. 1).

---

[5]The Court notes that this is a simple contract issue involving collection of a past due balance on an open account between private parties.  The outcome, while doubtlessly important to them, has no special public significance.

[6]Although the amount awarded on CPI's main claim - $127,972.02 - is certain, the amount of the settlement for Traffic Jam's counterclaim is unknown.

[7]CPI does not state how many appearances it made in this case, the Court notes that there were nine appearances made by CPI's counsel in the record.  It is unclear whether additional appearances were made during the course of depositions.

[8]The presiding U.S. District Judge plainly granted CPI "reasonable attorney's fees" arising in connection with its claim for $127,972.02.  Traffic Jam concedes that "[a]s a result of CPI's successful summary judgment on its main demand, this Court has held that it is entitled to reasonable attorney's fees." (R. Doc. 42, p. 1) (emphasis omitted).  The parties, however, contest the amount of the award.

Grant gives no indication of his academic credentials or bar licenses, although he does state that "since my initial efforts to collect from Traffic Jam were unsuccessful I spent minimal time on this matter, referring it to the Steeg Law Firm." *Id.*[9]

In its Reply, CPI attaches a second Affidavit from Glass ("Second Glass Affidavit") which describes the qualifications and backgrounds of Steeg, Glass, and Jené. (R. Doc. 45-1).[10] Specifically, Glass is an attorney who has been licensed to practice since 2011. (R. Doc. 36-3, p. 1). She graduated from Tulane Law School in 2011, has been employed by the Steeg Law Firm since August 2011, and has been a licensed attorney since October 2011. (R. Doc. 45-1, p. 1). According to the Affidavit, Glass was primarily responsible for performing most of the work on this case by, *inter alia*, representing CPI at two settlement conferences, filing initial disclosures and discovery requests, and moving for partial summary judgment. *Id.*

The Glass Affidavit also states that Stern is a partner at the Steeg Law Firm with over 30 years of experience. *Id.* The Affidavit states that Stern was responsible for overseeing the case. *Id.* The Glass Affidavit also states that Jené was a "licensed Louisiana attorney employed as a paralegal" at the Steeg Law Firm. *Id.* According to the Affidavit, Jené has been a paralegal at Steeg for over 20 years and has been a licensed attorney in Louisiana for thirteen years, having received her law degree from Loyola University of New Orleans. The Glass Affidavit does not specify what

---

[9]The Court notes that because Grant never enrolled as an attorney of record in this case, there are no means of verifying his billing entries as an attorney, which are presented for legal work, and not paralegal work. Grant's Affidavit provides with no evidence of Grant's qualifications, beyond the vague statement that he has been "practicing" for over "30 years." Grant does not appear to be a member of the Louisiana State Bar, or to have sought to enroll in the case under L.R. 83.2.5. For purposes of Louisiana state law, however, these defects are not fatal to Grant's application for attorney's fees. *See Atari*, 2002 WL 221613, at *2.

[10]In support of its original Motion CPI submitted an Affidavit from Glass, included as R. Doc. 36-3. ("First Glass Affidavit"). This Affidavit, which was apparently submitted on behalf of Glass, Steeg, and Jené, was factually deficient and will be considered in connection with this Motion only insofar as it supplements the Second Glass Affidavit.

tasks Jené conducted during the course of the litigation.

However, for purposes of this factor the Court finds that CPI has adequately demonstrated the skill of Grant, Stern, and Glass as required under state law, as well as for Jené in her paralegal capacity.

### ii.    Fees Customarily Charged in the Local Community

### (1).    Affidavit in Support

In its Motion, CPI states that Grant's rate is $350/hr., Stern's rate is $335-350/hr., Glass' rate is $175-180/hr., and Jené's rate is $150-160/hr.  *Id.* at 3-4.  Jené was billed at a "paralegal's hourly rate."  *Id.* at 3.  In opposition, Traffic Jam first argues that CPI has failed to meet its burden and demonstrate the reasonableness of rates because it failed to attach any affidavits from other attorneys which attest that the requested rates are reasonable.  (R .Doc. 50, p. 3).  In its Reply, CPI contends that it "did not retain an expert to opine regarding the rates charged by other local firms because doing so would have increased the amount of fees incurred in connection with this case."  (R. Doc. 45, p. 3).

Regardless whether CPI's failure to attach such documentation might impact its claim for attorney's fees under *federal* law, the Louisiana *state* law documentation requirements have been interpreted to find that an affidavit was not deficient merely "because it failed to include evidence of what other local firm routinely bill for similar cases."  *See Atari*, 2002 WL 221613, at *2. Although in this case CPI's failure is more pervasive in that it did not attach a motion at all, the Court notes that the failure to attach an affidavit at all is not more egregious than a failure to include billing rates.  As such, the Court cannot find CPI's failure to substantiate its rates sufficient to defeat the current motion for fees.

### (2)      Specific Rates Requested

Turning to the requested rates, the Court finds upon comparison with the prevailing market rates in New Orleans that none of the requested rates for Glass, Stern, Grant, or Jené are reasonable.

Both the Louisiana Rules of Professional Conduct and federal law require that reasonable hourly rates be calculated in relation to prevailing local standards.  *See* Rule 1.5(a)(3); *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990).  Louisiana federal courts sitting in diversity have applied both federal and state cases to determine whether a requested rate reflects rates actually charged in the community.  *See Tango Transport, L.L.C. v. Transport International Pool, Inc.*, 2011 WL 1304870, at *5 (W.D. La. Mar. 15, 2011); *Verizon Business Global LLC v. Hagan*, No. 07-415, 2010 WL 5056021, at *3-*7 (E.D. La. Oct. 22, 2010), *report and recommendation adopted by*, 2010 WL 5057517 (E.D. La. Dec. 1, 2010), *vacated on other grounds by*, 467 F. App'x 312 (5th Cir. 2012).[11]  "The actual time expended and the complexity of the case are the dominant factors in a court's determination of reasonableness or excessiveness."  *GMAC*, 2003 WL 21674467, at *2 (quoting *National Information*, 737 So.2d at 920).

### (A)      Glass

In opposing Glass' proposed hourly rate of $175-180/hr., Traffic Jam argues that considering that Glass had been licensed for approximately one month at the time she began working on this matter, she should be awarded a fee of $125/hr.  (R. Doc. 50).  In its Reply, CPI argues that Glass'

---

[11]The parties cite exclusively to federal cases in support of their arguments as to the reasonableness of both the hourly rates requested, as well as the total hours worked.  The Fifth Circuit has remarked that where the federal law lodestar *standard* is used to calculate an award of attorney's fees, and the use of federal case law goes unchallenged, it not grounds for independent review on appeal.  *See KF Industries Inc. v. Technical Control System, Inc.*, 89 F. App'x 881, 885 (5th Cir. 2004) (unpublished).

rate is reasonable, and cites a case which found that "$175 was a reasonable hourly rate for an associate with less than two years of experience . . . . Margaret Glass is an attorney with approximately 1.5 years of experience" (R. Doc. 45-1, pp. 3-4) (citing (*Atel Marine Investors, LP v. Sea Mar Management, LLC*, No. 08-1700, 2011 WL 2550505, at *3 (E.D. La. June 27, 2011).

Glass' hourly rate is plainly on the high end of what would be considered reasonable, as at the time she began working on this case she had approximately one month of practice experience. *See, e.g.*, *DeGersdorff v. Ritz-Carlton Hotel Co., LLC*, 2013 WL 654633, at *2 (E.D. La. Feb. 20, 2013) (finding that rate of $195 was reasonable for attorney with ten years of practice experience); *Cedotal v. Whitney National Bank*, No. 94-1397, 2010 WL 5582989, at *11-14 (E.D. La. Nov. 10, 2010) (citing cases and finding rate of $150/hr. reasonable for associate). Given the fact that Glass had virtually no experience at the time she began working on this case, the Court awards her a rate of $135/hr. for her work in connection with this routine collections matter.

### (B)    Stern and Grant

In opposing CPI's proposed rate for Grant of $350/hr., and Stern's proposed rate of $335-350/hr., Traffic Jam argues that these rates should be adjusted downward to $250-$300/hr. (R. Doc. 50, p. 5). Traffic Jam contends that this is consistent with recent local cases in this jurisdiction. *Id.* (citing *Gulf Coast Facilities Management, LLC v. BG LNG Services, LLC*, No. 09-3822, 2010 WL 2773208 (E.D. La. July 13, 2010). In its Reply, CPI argues that rates of $330-400 have been found reasonable for attorneys with similar years of experience as Stern and Grant. (R. Doc. 45, p. 4 (Citing, *e.g.*, *Yelton v. PHI, Inc.*, No. 09-3144, 2012 WL 3441826, at *6 (E.D. La. Aug. 14, 2012).

The Court notes that to justify his requested hourly rate of $350, Grant's Affidavit states only that he has been a "practicing attorney for over 30 years." (R. Doc. 36-2, p. 1). As to Stern's

requested rate of $335-350, the Second Glass Affidavit lists his qualifications as (1) his 30 years of experience, and (2) the fact that he graduated from Yale Law School.  Neither of these two Affidavits indicate the types of matters Stern or Grant have been involved in, whether they have a particular expertise in the subject area, or whether they have otherwise distinguished themselves in the practice of law such that, for this simple collections case, Grant's services in initially appraising and referring the case, and Stern's subsequent supervision of the case, should command the requested rates.  *See Coves of the Highland Community Development District*, No. 09-7251, 2012 WL 174477, at *2-*3 (E.D. La. Jan. 20, 2012) (citing cases, and finding that notwithstanding deficiency of affidavit which averred "familiarity" with hourly rates in the New Orleans area, rate of $300/hr. was reasonable for attorney with 39 years of experience).[12]

Moreover, the Court notes that even "extremely qualified and seasoned litigators" who might justify a comparable rate "customarily charge their highest rates only for trial work.  Lower rates may, and indeed should, be charged for routine work requiring less extraordinary skill and experience."  *White v. Imperial Adjustment Corp.*, 2005 WL 1578810, at *8 (E.D. La. June 28, 2005) (finding that a rate of $225/hr. would be the "top range" for routine work performed by such "extremely qualified and seasoned litigators.").  As the fees requested pertained to "supervisory" work on a routine collections matter which never proceeded to trial, Stern's rate, which he does not attest to in a sworn affidavit, is excessive.  Stern and Grant are awarded flat rates of $210/hr. for their work on this routine collections matter.  *See Braud v. Transport Service Co. of Illinois*, Nos. 05-1898, 05-1977, 05-5557, 06-0891, 2010 WL 3283398, at *15 (E.D. La. Aug. 17, 2010).

---

[12]Attorney's fees are typically calculated at rates reasonable for attorneys in the New Orleans area regardless of where those attorneys might otherwise practice or be licensed.  *See, e.g.*, *DeGersdorff v. Ritz-Carlton Hotel Co., LLC*, No. 11-2301, 2013 WL 654633, at *2 (E.D. La. Feb. 20, 2013) (applying New Orleans rates to attorney who practiced in Texas).

(C)     Jené

Finally, in opposing Jené's "paralegal" rate of $150-160/hr., Traffic Jam argues that Jené's "paralegal" rate should be reduced to $75-25/hr., as clerical and paralegal work should not be compensated at attorney-level hourly rates simply because a licensed attorney performs it.  (R. Doc. 50, p. 9) (citing *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 711-13 (E.D. La. 2001)).

In its Reply, CPI argues that Jené's requested rate is defensible on grounds that although paralegals are typically awarded hourly rates considerably less than Jené's rate, Jené is a licensed attorney and the rate sought is within the range of reasonable rates for an attorney with her level of experience.  (R. Doc. 45, p. 4) (citing, *e.g.*, *Ranger Steep Services, LP v. Orleans Materials & Equipment Co.*, No. 10-112, 2010 WL 3488236, at *3 (E.D. La. Aug. 27, 2010)).

Jené's rate of $150-160 is unreasonable in context.  The fact that Jené holds a bar license does not alter how she is to be billed, which is according to the nature of the services she actually provides.  *See Lalla*, 161 F. Supp. 2d at 711-13.  Conversely, although CPI argues that Jené performed some work that may have been "legal in nature," Jené has never enrolled as an attorney of record in this case and the Court does not consider it equitable to hold Traffic Jam accountable for fees at the attorney-level rate when there is no indication that the client, CPI, ever consented, or even knew, that Jené was acting in an attorney capacity during the course of this matter.[13]

The requested rate is also far in excess of what has been found reasonable for individuals billed in a paralegal capacity.  Courts do not typically consider the number of years of experience when determining paralegal rates.  *See, e.g.*, *Ranger Steep Services*, 2010 WL 3488236, at *3

---

[13]This circumstance is plainly distinguishable from Grant, who also did not enroll as an attorney of record, but submitted a sworn Affidavit stating that he has been "representing CPI as its general counsel for approximately 20 years." (R. Doc. 36-2, p. 1).  There is no indication from the documentation submitted that Jené and CPI had a similarly close professional relationship.

(finding rate of $100/hr. for a paralegal reasonable, where paralegal's years of experience were not described); *Gulf Production Co., Inc. v. Hoover Oilfield Supply, Inc.*, Nos. 08-5016, 09-0104, 09-2779, 2011 WL 5299620, at *2 (E.D. La. Nov. 3, 2011) (Roby, M.J.) (finding rate of $75/hr. for a paralegal with undefined number of years of experience was reasonable, where rate was unopposed); *Stogner v. Sturdivant*, 2011 WL 6140670, at *2 (M.D. La. Dec. 9, 2011) (finding rate of $95/hr. for paralegal reasonable for paralegal with undefined number of years of experience). The Court finds that a rate of $95 is reasonable for Jené's work in connection with this routine collections matter.

### b.    The Ultimate Results Obtained[14]

Neither party contests that CPI prevailed on the full amount of its main claim for damages on its open account, as reflected in the Court's Order granting CPI's Motion for Partial Summary Judgment. (R. Doc. 26). Traffic Jam's counterclaim was subsequently dismissed by the presiding U.S. District Judge after the parties settled for an undisclosed amount. (R. Docs. 52, 55).

In its Opposition, Traffic Jam argues that CPI's application for attorney's fees should be disallowed to the extent that it included entries for defense of the counterclaim because this did not comprise any portion of the judgment for which CPI was awarded fees - a fact which CPI *acknowledged* when it brought the instant Motion. *See* (R. Docs. 50, p. 8; 36-1, p. 2). In its Reply, CPI argues that "[a]ll of the time billed by CPI's counsel on this case was necessary to protect CPI's interests." *Id.* at 8.

Here, regardless whether investigation of the facts underlying Traffic Jam's counterclaim might have aided CPI's prosecution of its main claim or its "interests" in general, the Court finds

---

[14]The Court notes that this "ultimate outcome" factor is conceptually at odds with § 9:2871's intended scope. Nevertheless, the Court finds that due to the fact that the motion for attorney's fees arises in connection with a specific referral, consideration of the totality of CPI's demand is instructive in limiting its entitlement to relief.

13

that for purposes of appraising the "ultimate results" which CPI "obtained" in this case, CPI's insurer, Travelers, provided "consideration" to Traffic Jam to settle this claim.  *See Tectrans, Inc. v. New Orleans Aviation Board*, No. 09-3461, 2010 WL 5825424, at *5-*6 (E.D. La. Nov. 18, 2010).  Notwithstanding the fact that the details of the settlement have not been provided to the Court, the "ultimate results" of the counterclaim were not clearly favorable to CPI, and weigh against finding that the award of fees is reasonable in connection with *both* CPI's main claim and its counterclaim.

Here, CPI itself chose to move only for *partial* summary judgment on its main claim, and the presiding U.S. District Judge's Order of dismissal explicitly states that it "is not to affect CPI Card Group-Nevada, Inc.'s *main demand* against Traffic Jam . . . for payment on its *open account*." (R. Doc. 55) (emphasis added); *see Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, No. 06-7185, 2012 WL 4959636, at *3-*5 (E.D. La. Aug. 24, 2012) (finding that an attempt to collect on matters outside the scope of referral in related litigation was inappropriate); *cf Kenner City v. Nationwide Public Insurance Adjusters, Inc.*, No. 07-526, 2008 WL 2388380, at *3 (E.D. La. June 9, 2008) (finding that award of attorney's fees on counterclaim for legal theories other than an "open account" could not be determined where summary judgment motion did not address those theories).  This distinction is especially sharp when considering a fee award under § 9:2781.  *See American Natural Energy Corp.*, 2007 WL 2071830, at *3.

Even if authority to award attorney's fees for CPI's counterclaim were allowable, given the "punitive" nature of an award under § 9:2871, courts have unsurprisingly distinguished between recovery under an "open account" and other types of relief.  *See, e.g.*, *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007) (finding that for purposes of open

14

accounts statute, "[a] claim for breach of contract and a claim under the open account statute are considered distinct causes of action."); *Congress Square Ltd. Partnership v. Polk*, No. 10-317, 2011 WL 837144, at *4 (E.D. La. Mar. 4, 2011) ("[C]ourts-while acknowledging that an agreement necessarily underlies an open account-have consistently drawn the distinction between open accounts and ordinary contracts."). CPI nonetheless contends that Traffic Jam's counterclaim relates to defects in the merchandise sold during the open account, and that evaluation of the underlying facts of the counterclaim was necessary to framing its own defense.

Where summary judgment is granted only as to only some of the claims in a case, courts have found that a specific award of fees was not ripe. *See Technical Engineering Consultants, LLC v. Beall*, No. 11-1579, 2012 WL 4141425, at *3-*4 (E.D. La. Sept. 14, 2012) (finding that attorneys fees could be granted "contingent upon a finding of liability" on counterclaim). Here, an award of attorney's fees for actions taken in connection with CPI's counterclaim were, at best, unripe at the time the instant motion was referred to the undersigned. *See  San Francisco Estats, S.A. v. Westfeldt Brothers, Inc.*, No. 97-1102, 1998 WL 290206, at *4 (E.D. La. June 1, 1998) (Vance, J.) (describing counterclaim as "meritless").[15]

### c.    Intricacy of Facts; Character and Extent of Work Performed

### i.    Character of Work; Intricacy of Facts

As to the character of the work performed, CPI does not contend that its prosecution of the contractual claim was anything other than straightforward. The Court notes that CPI's memorandum

---

[15]By contrast, where *both* a main claim and a counterclaim are disposed of at the same time, the relatedness of the counterclaim to the "open account" can result in an award of fees for both motions where the "defense was necessary to vindicate its open account claim." *KF Industries, Inc. v. Technical Control System, Inc.*, 89 F. App'x 881, 885 (5th Cir. 2004) (unpublished); *see also San Francisco Estats, S.A. v. Westfeldt Brothers, Inc.*, No. 97-1102, 1998 WL 290206, at *4 (E.D. La. June 1, 1998) (Vance, J.) (finding that attorney's fees under § 9:2781 could be awarded for action which included counterclaim for detrimental reliance, where parties' open account action was "inherently intertwined with . . . defense against [the] counterclaim.").

of law in support of its Motion for Partial Summary Judgment was a routine, seven-page document. (R. Doc. 12). Indeed, the presiding U.S. Judge analyzed the applicable legal principles at play in CPI's main claim as under "a basic tenet of contract law." (R. Doc. 26, p. 5). Therefore, the Court finds that the work CPI performed in connection with its contractual remedies was neither complex nor extensive. This factor weighs heavily against awarding the fee application as stated.

Although CPI claims that the facts of Traffic Jam's counterclaim were "intricate," the Court notes that the presiding U.S. District Judge characterized the product defects as owing to the fact that the cards to be sent to Traffic Jam "stuck together." (R. Doc. 26). CPI provides no insight as to how the same facts which the District Judge summarized in one line were somehow drastically more complex or intricate; indeed, Traffic Jam's counterclaim in this case was only three pages long, and the parties' joint pretrial order only eleven pages long. The Court cannot find that the character of the work performed or the intricacy of the attendant facts should weight in favor of CPI's claims, and as a result this factor also weighs against a finding that the fee application, as submitted, was reasonable.

### ii.    Extent of Work Involved

As to the extent of work involved, CPI argues that the "complications" of the discovery process were exacerbated by the strategic obstinance of Traffic Jam's counsel, who "fail[ed] to cooperate and follow court rules . . . [which] forced CPI's counsel to do extra work." (R. Doc. 45, p. 5-6). Specifically, CPI argues that Traffic Jam's counsel's actions were "unpredictable," which led CPI to not only bill for entries regarding the counterclaim, but also led CPI up several dead ends: in particular, CPI argues that the motion to compel, although not filed, was warranted in light of the Traffic Jam's failure to respond to discovery. *Id.* at 6, 8. CPI was also obligated to attend a pre-trial

16

conference for which Traffic Jam's attorneys failed to appear, and that Traffic Jam failed to provided its initial disclosures in a timely manner. *Id.* at 6.

In opposition, Traffic Jam does not contest the characterization of its own litigation strategy. Instead, Traffic Jam argues that CPI's time entries do not reflect billing judgment. (R. Doc. 50, p. 6). For example, CPI requests 1.8 hours of work arising in connection with the above-mentioned motion to compel, which Traffic Jam argues is outside the award granted by the presiding U.S. District Judge because the motion was never filed. *Id.* at 7.

The Court notes that under Louisiana state law, a party need not demonstrate "billing judgment" in order to be entitled to attorney's fees, and even where appropriately considered, other courts have found that a party's unwillingness to participate in discovery can be grounds for an award of attorney's fees against an opponent. *See San Francisco*, 1998 WL 290206, at *4 (finding that the parties' "inability to conduct discovery without the Court's intervention raised the costs of this litigation."). Therefore, the Court finds that CPI may be entitled to request attorney's fees for work done in furtherance of its claim, such as on its never-filed motion to compel.

Traffic Jam's Opposition also argues that many entries were "double billed" by CPI's attorneys, who requested compensation for Stern, Glass, and Jené on duplicitious matters. *Id.* These include CPI's request of "approximately 6.3 hours ($1,237) for work completed on a *two page* Complaint in a case that was not complex." *Id.* at 7. Moreover, some of these "double billed" entries are inconsistent; for example, Stern billed 0.30 hours for a meeting involving review of the Answer, whereas Glass billed 0.50 hours for the same meeting. *Id.*

In its Reply, CPI argues that if there is in fact any discrepancy between entries for which both Stern and Glass billed, "Mr. Stern *likely* cut his time prior to billing CPI." (R. Doc. 45)

(emphasis added).  CPI does not *confirm* that this is so, because Stern apparently reviews all time entries himself, and deletes any entries that "appear excessive, redundant or unnecessary prior to billing clients each month."  *Id.*  Because of this, "it is impossible to show the hours actually spent on this litigation."  *Id.*

The Court finds that CPI's argument leaves considerable grounds for speculation, and weighs against the granting of the specific fee which CPI has requested.

### d.    Conclusion

The Court has found that CPI is not entitled to an award for any of its entries which pertain to Traffic Jam's counterclaim.  Further, CPI has argued that the majority of its "initial disclosures" pertained to explorations of the defect issues giving rise to Traffic Jam's counterclaim.  Given these findings, as well as the fact that CPI has implicitly admitted that there is no means of verifying its time entries, and the fact the attorney who was responsible for "altering" the Steeg Law Firm's bill has not submitted any explanatory statement into court, the Court concludes that the fee award submitted by CPI is excessive.

### 2.    Calculation of the Fee Award

The fee application submitted by CPI seeks to recover 12.1 hours of attorney time for Stern, 100.8 hours of attorney time for Glass, 25.6 hours of paralegal time for Jené, and 3.8 hours for Grant. *See* (R. Doc. 36-1, pp. 3-4).[16]  Having found that the fee application submitted by CPI is not reasonable, the next issue is how to calculate a reasonable rate.  Traffic Jam argues that the Court should either reduce the bill by a "reasonable percentage," or else conduct a line-by-line analysis

---

[16]As to Glass and Stern, CPI's calculation appears to contain mathematical errors; the Motion for attorney's fees states that 100.4 hours have been requested for Glass, and 11.9 hours were requested for Stern.  The Court has substituted the revised numbers above.

of the bill.  (R. Doc. 50, p. 8).  CPI has provided no guidance as to which of its individual entries are attributable to its main claim, and which to its counterclaim.  However, the Court finds that the entries on CPI's billing statements are reasonably detailed, and that a line-by-line analysis of the same will provide the most accurate method of determining how much time CPI devoted to its counterclaim and other unallowable matters.[17]  *See, e.g.*, *Oreck Direct, LLC v. Dyson, Inc.*, No. 07-2744, 2009 WL 961276, at *2-*3 (E.D. La. Apr. 7, 2009) (Vance, J.); *GMAC*, 2003 WL 21674467, at *2.  The Court need not, however, detail each and every one of the billing statements in this Order when conducting such an analysis.

The Court also finds that because the great majority of the billing entries can be attributed to one of the "events" in this case, the entries will be divided along those lines.  Therefore, the Court divides the entries for CPI's four entrants into (a) Initial Correspondence, (b) Complaint, Answer, and Answer to Counterclaim, (c) Initial Disclosures, (d) Discovery, (e) Motion for Partial Summary Judgment, (f) Settlement, (g) Pre-Trial, (h) Miscellaneous, (i) Attorney's Fee Motion, and (j) Counterclaim Issues.

### a.    Initial Correspondence[18]

Grant, the only entrant for this category, billed 2.8 hours for initial correspondence.  The entries involve time for the initial telephone conference, analyzing invoices regarding Traffic Jam and discussing same with Dawson, sending letters as well as exchanging emails between its client and FedEx regarding the service of a letter.  In reviewing these entries, the Court finds that the entry

---

[17]Although CPI's Motion also includes a breakdown of attorney's fees - presumably because each of Steeg's attorneys' rates changed during the course of this lawsuit - because the Court has awarded a single flat rate, the total amount billed for each entry is no longer relevant.

[18]Grant is the only attorney who has requested entries for time prior to the Complaint.

dated June 1, 2011 which requests 0.4 hours for analyzing invoices regarding Traffic Jam is administrative in nature and therefore disallowed.   The total allowable hours for initial correspondence is 2.4 hours.

### b.      Complaint, Answer, and Answer to Counterclaim

Next, billing time sheets review indicates that there were four billing attorneys who submitted time for the preparation of the original Complaint, Answer and Counterclaim.  However, the Complaint was eight pages long and straightforward, as this is a simple collections case.  For preparation of the Complaint the attorneys billed a total of 9.0 hours with Jené (2.3), Glass (5.1), Stern (1.3), and Grant (0.3).  Likewise, Traffic Jam's Answer and Counterclaim were similarly straightforward, consisting of 4.5 pages in length.

The Court having reviewed the time sheets finds that two billing entries for Jené dated November 17, 2011 for pulling scanning and labeling exhibits (0.3 hours) and for filing and filling out the civil cover sheet and downloading the waiver forms for service (0.2 hours) are administrative in nature and will be disallowed.  *See, e.g.*, *Rodriguez v. Astrue*, 2012 WL 3744700, at *1 (D. Conn. Aug. 28, 2012).  The Court further finds that all time billed for preparation of the complaint is reasonable.  As a result, the time requested is reduced from 9.0 hours to 8.5 hours which are reasonable, allocated as follows: Jené (1.8), Glass (5.1), Stern (1.3), and Grant (0.3).

### c.      Initial Disclosures

CPI seeks 23.7 hours of time from Jené (5.9), Glass (16.7), and Stern (1.1) in connection with work performed on CPI's initial disclosures.  According to CPI "[p]reparing of the initial disclosures required review of numerous e-mails regarding the alleged defects, and counsel had to obtain and review documents which were necessary to complete the initial disclosures properly.  Counsel also

used this time to obtain additional information regarding the defects claims." (R. Doc. 45, p. 6).

Having reviewed the billing entries associated with the preparation of the initial disclosures, the court finds that all of them are reasonable, even to the degree there may have been some intermingling with the defects claims. The court further notes that regarding the April 23, 2012 entry for Jené, that CPI deleted the time charged by her for reviewing and revising the initial disclosures. The court in reviewing several of the billers notes that there are entries for duplicative billings for conferences between attorneys and paralegals, which it declines to strike because such conferences are reasonably necessary to ensure that work delegated by attorneys are being properly handled. *See Prison Legal News v. Umatilla County,* 2013 WL 2156471, at *8 & n.9 (D.Or. May 16, 2013). Therefore the reasonable hours total 23.7 of time from Jené (5.9), Glass (16.7) and Stern (1.1).

### d.    Discovery Issues

In this category, CPI seeks a total award of 12.6 hours of time for work performed by Jené (2.4 hrs.), Glass (9.6 Hrs.) and Stern (0.6). CPI contends that it was forced to send out two sets of written discovery. It points out that Mike Grennan sent out the initial discovery in May 2012 but Traffic Jam's responses were vague and lacked damage calculations. CPI's counsel thereafter attempted to obtain a damages calculation several times prior to sending out additional discovery in September 2012 but Traffic Jam's counsel allegedly never provided one. (R. Doc. 45, p. 7).

Additionally CPI suggests that Traffic Jam's counsel failed to cooperate and follow the court rules which resulted in it having to draft a Rule 37 letter and a Motion to Compel when Traffic Jam failed to produce initial disclosures by the April 30, 2012 deadline. In fact, CPI contends that it was not until Traffic Jam received the Rule 37 letter and after it began preparing a draft Motion to

Compel that the disclosures were provided. *See* (R. Doc. 45, pp. 6-7).

Further, CPI has attached what appears to be its September 12, 2012 discovery requests to its Motion for Partial Summary Judgment (R. Doc. 12-4). The attached discovery is comprised of 13 Interrogatories, 5 Requests for Production of Documents, and 11 Requests for Admission. *See id.* at 6-11. The requests themselves are not complex. For example, 6 of CPI's 13 Interrogatories, Nos. 5-10, all begin with the phrase, "[p]lease describe the factual and legal basis for your . . . affirmative defense," and then simply list an affirmative defense raised by Traffic Jam in its Answer. *See id.* at 7.

Moreover, the substance of CPI's discovery includes requests for information directly related to CPI's Counterclaim. *See, e.g.*, *id.* at 8-10 (Interrogatory No. 13, Request for Production No. 5, Requests for Admission Nos. 10, 11). The intermingled nature of CPI's discovery is reflected in its memorandum in support of this Motion, where it argues that Mike Grennan, CPI's counterclaim counsel, ("Grennan") "sent out initial discovery . . . but Traffic Jam's responses were vague and no damage calculation was provided. CPI's counsel attempted to obtain a damages calculation several times prior to sending out additional discovery in September of 2012." (R. Doc. 45, p. 7).

Nevertheless, having reviewed the discovery in question, the court finds that all of the entries are reasonable and awards 12.6 hours for work performed by Jené (2.4), Glass (9.6), and Stern (0.6).

### e.    Partial Summary Judgment

Next at issue are the entries associated with the preparation of the Partial Motion for Summary Judgment. CPI alleges that 33.0 hours of attorney time was appropriately charged for work related to the Summary Judgment including Jené (4.0), Glass (25.5), and Stern (3.5).

The partial summary judgement which was filed in the record consist of eight pages which

largely consists of citation to the record with Glass during the larger part of the billing for the preparation of the pleading. (R. Doc. 12-1, pp. 1-8). Additionally, the affidavit supporting the motion is only four pages with exhibit attachments of unpaid invoices issued by CPI to Traffic Jam. (R. Doc. 12-3, pp. 1-4). The supplemental memorandum in support of the Partial Motion for Summary Judgment is four pages in length.

The record shows that Glass billed a total of 20.1 hours in connection with preparing the eight page summary judgment. Further the record shows that Glass spent 4.0 hours preparing the supplemental memorandum and 1.4 hours for communication generally regarding the Partial Motion for Summary Judgment. The court finds that 20.1 hours is not reasonable given the length and complexity of the Partial Motion for Summary Judgment but that 12.0 hours is reasonable. Having reviewed the entries for Stern and Jené regarding the Motion for Summary Judgment, the Court finds that they are reasonable. As a result, the reasonable hours for work performed in connection with the Partial Summary Judgment is Glass (12.0), Jené (4.0) and Stern (3.5) for a total of 19.50 hours.

### f.      Settlement Negotiations

CPI seeks 13.4 hours for attorney time for work regarding the settlement conference which consist of Jené (2.9), Glass (8.6) and Stern (1.9). The record reflects that two settlement conferences were conducted during the pendency of this matter. The first conference occurred on November 27, 2012, and the Court's Minute Entry reflects that the conference took 75 minutes. (R. Doc. 15). The second occurred on December 18, 2012, and the Court's Minute Entry reflects that the conference took 32 minutes. (R. Doc. 30).

In reviewing the record, the Court notes that Glass billed 1.5 hours for a three page position paper which was factually based and seemingly a restatement of the information asserted in CPI's

23

Complaint.  The Court finds that 1.0 is reasonable for the time spent preparing the confidential settlement paper that was submitted to the undersigned in advance of the conference.

In reviewing the minute entry for time of the settlement conference of November 27, 2012, it reflects that the conference lasted one hour and fifteen minutes, and Glass billed 3.0 hours for attending the conference. As a result this entry will be discounted to reflect the actual time of the conference plus reasonable travel time to the court of 1.50 hours.

Additionally the entry of December 18, 2012 reflects an entry of prepared for and attended settlement conference for 2.3 hours.  However, the actual conference according to the Court's record lasted 32 minutes.  Considering the addition of reasonable travel time, the Court finds that a reasonable number of hours for the conference would be 0.7 hours.  The Court finds that Glass' other entries, as well as all of the entries for Jené and Stern, are reasonable.  Therefore, the total hours awarded for these entries are Jené (2.9), Glass (5.2) and Stern (1.9).

### g.        Pretrial Activities

CPI next seeks 17.2 hours of attorney time for work on issues arising in connection with the pre-trial conference, from Jené (3.2), Glass (13.2), and Stern (0.8).  Pretrial activities in this case were comprised of filing a straightforward, eleven-page pretrial order, for which CPI's statement of material facts was less than three pages long, and which contained only four contested issues of fact and three contested issues of law.  *See* (R. Doc. 24, pp. 2-5, 7).  CPI also attended a pretrial conference with the presiding U.S. District Judge, at which Traffic Jam failed to appear.

According to the time records Glass billed 8.0 hours for the drafting and editing of the Pretrial Order which is jointly prepared by counsel for the parties.  The record  however shows that contrary to the billing entry of December 13, 2012, no pretrial conference took place because

counsel for Traffic Jam Events, LLC, Stephen Petit, failed to appear. *See* (R. Doc. 27). However, the billing entry reflects 4.5 hours were billed by Glass which will be substantially disallowed. The court finds that a reasonable amount of preparation time that is appropriate for the Pretrial conference is 0.7 hours. The Court finds that Glass' other billing entries, as well as all entries for Jené and Stern, are reasonable. Therefore, the total number of hours allowed for pretrial activities in this case is 13.4, allocated as follows: Jené (3.2), Glass (9.4), and Stern (0.8).

### h. Miscellaneous and Unknown Entries

CPI next seeks to recover 3.8 hours, allocated between Jené (2.0), Glass (1.5), and Grant (0.3) for what could best be classified as miscellaneous entries consisting of email transmittals and office conferences for various case related activities. The Court having reviewed Jene's entries, finds that they are reasonable. Likewise, Glass' entries are all reasonable. Finally, Grant's single miscellaneous entry is reasonable. Consequently, the 3.8 hours for the entries which may best be characterized as miscellaneous in nature are reasonable and will be allowed.

### i. Filing Attorney's Fees Motion

CPI requests a total of 8.6 hours from Jené, Glass, and Stern for work arising in connection with this Motion for attorney's fees. However, the Order awarding attorney's fees did not reach the issue of whether fees could be awarded for filing the *motion* for attorney's fees, and, as CPI's motion requesting such fees was obviously composed after CPI prevailed on its Motion for Partial Summary Judgment, activities thereto are not plainly compensable. Thus, the Court must exclude all entries which reasonably relate to the instant Motion for Attorney's Fees from the award in question.

### j. Counterclaim issues

CPI has requested time for Jené, Glass, Stern, and Grant which explicitly arises in connection

with Traffic Jam's counterclaim. As previously noticed the Court's Order awarding attorney's fees did not extend to Traffic Jam's counterclaim, but only to those expenditures arising in connection with CPI's main claim. CPI's billing entries have not indicated which entries arise in connection with the counterclaim, and several of the entries pertain to both counterclaim-related and non-counterclaim related issues. These entries have been adjusted where necessary. Moreover, the Court has disallowed any entry where it is unambiguous in context that the entry in question pertained to Traffic Jam's counterclaim.

### k.    Conclusion

In sum, CPI is entitled to recover the following amounts: **Grant**: 2.4 hrs. for Initial Correspondence; 0.3 hrs. for Complaint; 0.3 hrs. for Miscellaneous. Total: 3.0 hrs., at $210/hr. for a total fee of $630.00. **Jené**: 1.8 hrs. for Complaint; 5.9 hrs. for Initial Disclosures; 2.4 hrs. for Discovery; 4.0 hrs. for Partial Summary Judgment; 2.9 hrs. for Settlement; 3.2 hrs. for Pretrial; 2.0 hrs. for Miscellaneous. Total: 22.2 hrs., at $95/hr. for a total fee of $2,109.00. **Glass**: 5.1 hrs. for Complaint; 16.7 hrs. for Initial Disclosures; 9.6 hrs. for Discovery; 12.0 hrs. for Partial Summary Judgment; 5.2 hrs. for Settlement; 9.4 hrs. for Pretrial; 1.5 hrs. for Miscellaneous. Total: 59.5 hrs. at $135/hr. for a total fee of $8,032.50. **Stern**: 1.3 hrs. for Complaint; 1.1 hrs. for Initial Disclosures; 0.6 hrs. for Discovery; 3.5 hrs. for Partial Summary Judgment; 1.9 hrs. for Settlement; 0.8 hrs. for Pretrial. Total: 9.2 hrs. at $210/hr., for a total fee of $1,932.00. **Total**: $12,703.50.

## III.   Costs

In support of its Motion, CPI also moves under Rule 54(d) for an award of costs. Accordingly, CPI attaches a list of costs, entitled "disbursements." (R. Doc. 36-3, p. 20). Traffic Jam opposes CPI's Motion in part. Courts which have specifically interpreted § 9:2781 against an

award of costs have noted not only that "[t]he statute does not provide for an award of costs," but further that interpreting the statute to allow costs would be a "liberal reading" of the same. *San Francisco*, 1998 WL 290206, at *5. Instead, an award of costs should await the entry of judgment under Rule 54(d). *See id.*

Accordingly, the scope of allowable costs is not before the undersigned at this time because no judgment has been entered.[19] The matter comes before the undersigned on referral, and the presiding U.S. District Judge's Order referring the Motion references only "attorney fees." (R. Doc. 41). This referral was premised upon an Order which awarded only "attorney's fees." (R. Doc. 26, p. 8). The undersigned's authority to determine the "reasonableness" of a fee arises from the referral, and particular caution must be taken not to expand the scope of delegated authority. As such, the Court finds that it would not be appropriate to determine the reasonableness of CPI's claimed "costs" at this time. *See, e.g.*, *Greater New Orleans*, 2012 WL 4959636, at *10 (considering costs when the same explicitly appeared in order of referral). In so finding, the Court does not pass on whether CPI is or is not entitled to costs upon entry of judgment.

## IV.   Conclusion

Accordingly,

**IT IS RECOMMENDED** that **Plaintiff, CPI Card Group-Nevada, Inc.'s Motion for**

---

[19]Rule 54(d) provides that "[u]nless a *federal* statute, these rules, or a *court order provides otherwise*, costs - other than attorney's fees - should be allowed to the prevailing party." Rule 54(d) (emphasis added). Thereafter, a prevailing party may move for an award of costs under 28 U.S.C. § 1920. Fifth Circuit case law indicates that taxation of costs is a procedural requirement governed by federal law. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 688-90 (5th Cir. 1991). Other courts in this district have found that "[i]n a diversity case, federal law controls in regard to the assessment of costs." *Kodrin v. State Farm Insurance Co.*, No. 06-8180, 2008 WL 294552, at *2 (E.D. La. Jan. 31, 2008), *vacated on other grounds*, 314 F. App'x 671 (5th Cir. 2009). CPI does not cite a particular *federal* statute entitling it to recovery. In the Fifth Circuit, there is a "strong presumption" that allowable costs will be awarded to the prevailing party. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985).

**Reasonable Attorney's Fees (R. Doc. 36)**, filed by Plaintiff, CPI Card Group-Nevada, Inc., ("CPI"), be **GRANTED**, and that CPI be awarded reasonable attorney's fees in the amount of $12,703.50, to be paid by Defendant, Traffic Jam, Inc., ("Traffic Jam") **no later than fourteen (14) days** of the adoption of this Report and Recommendation by the District Judge.

   **IT IS FURTHER RECOMMENDED** that CPI's Motion be **DENIED** as to its request for costs, as such a request is premature.

   A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **no later than fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[20]

   New Orleans, Louisiana, this 21st day of June 2013.

          **KAREN WELLS ROBY**
        **UNITED STATES MAGISTRATE JUDGE**

---

[20]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.